Filed 12/16/20  P. v. Milonis CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANDREW DORIAN MILONIS,<br><br>    Defendant and Appellant. | D076481<br><br><br>(Super. Ct. No. SCE370896) |


APPEAL from a judgment of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed.

Daniel J. Kessler, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

An October 2017 consolidated complaint charged defendant Andrew Dorian Milonis with 13 counts.  Counts 1-10, including two murder counts, stemmed from a driving under the influence collision that occurred on May 14, 2017.  Counts 11-13 related to a separate driving under the influence incident that occurred on November 6, 2016.  After defendant was found

competent to stand trial, the court severed the counts from the May 2017 collision from those of the November 2016 incident, and trial proceeded only on the May 2017 incident.

During defendant's July 2019 jury trial, the prosecutor amended the information as follows to clarify and renumber the counts from the May 2017 collision:

Counts 1 & 2, murder (Pen. Code,[1] section 187, subd. (a));

Count 3, gross vehicular manslaughter (§ 191.5, subd. (a)). Count 3 included enhancement allegations that defendant fled the scene of an accident (Veh. Code, § 20001, subd. (c)); that he proximately caused great bodily injury or death to more than one person (*id.*, § 23558); and that he personally inflicted great bodily injury or death (§ 1192.7, subd. (c)(8));

Count 4, driving at an unreasonable speed while under the influence of alcohol and thereby causing bodily injury to another person (Veh. Code, § 23153, subd. (a)). Count 4 included enhancement allegations that defendant's actions proximately caused great bodily injury to other people (§ 1192.7, subd. (c)(8) & Veh. Code, § 23558), and that he personally inflicted great bodily injury upon two people (§ 12022.7, subd. (a));

Count 5, driving at an unreasonable speed with a measurable amount of alcohol in his bloodstream (Veh. Code, § 23153, subd. (b)). Count 5 included enhancement allegations that defendant's actions proximately caused great bodily injury to other people (§ 1192.7, subd. (c)(8) & Veh. Code, § 23558); and that defendant personally inflicted great bodily injury upon two people (§ 12022.7, subd. (a));

---

[1]     All further statutory references are to the Penal Code unless otherwise noted.

Count 6, fleeing the scene of an accident that resulted in death or serious injury (Veh. Code, § 20001, subd. (b)(2));

Count 7, leaving the scene of an accident (Veh. Code, § 20002, subd. (a)); and

Count 8, driving with a suspended driver's license (Veh. Code, § 14601.1, subd. (a)).

On July 17, 2019, a jury returned a verdict finding defendant guilty of all counts in the amended information and found all enhancement allegations true.

On August 26, 2019, defendant was sentenced to 34 years in prison. Specifically, the court imposed two consecutive terms of 15 years to life for counts 1 and 2, plus a consecutive term of four years for count 6. The sentence on count 3 was stayed under section 654, subdivision (a), and he received credit for time served on counts 7 and 8. Counts 4 and 5 were dismissed on motion of the prosecutor. The court imposed a restitution fine of $10,000 (§ 1202.4); a suspended $10,000 matching parole revocation fine (§ 1202.45); and court fees totaling $574.

Defendant timely appealed.

Appellate counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) indicating he has not been able to identify any arguable issues for modification or reversal on appeal. Counsel asks the court to review the entire record for error as mandated by *Wende*.[2]

---

[2] Prior to filing his *Wende* brief, we granted appellate counsel's request to augment the record to include defendant's mental competency trial held on April 5, 2019 (case No. MH114406); and copies of all minute orders from that same case. Our *Wende* review has included the augmented record.

We offered defendant the opportunity to file his own brief on appeal. On November 23, 2020, he filed a supplemental brief, which we have read and considered. Affirmed.

## FACTUAL BACKGROUND

On May 14, 2017, Christian F. and Jessica F. were married. Jessica was eight months pregnant and had two sons (nine and 10 years old) from a prior relationship. On that day, Jessica and Christian drove in separate cars to visit Jessica's grandmother in Ramona to celebrate Mother's Day. Jessica's sons drove with Christian. On the way to Jessica's grandmother's home, a black SUV hit Jessica's car. The impact sent her car spinning in the air and slamming into a tree. She and her unborn baby died at the scene.

Prior to the accident, defendant was observed drinking whiskey and beer in a bar. The bar's video surveillance cameras recorded defendant's activities. The bartender, Garrett F., gave defendant a business card with information on how to arrange a rideshare with Lyft. Garrett later closed out defendant's tab and informed defendant he would not be served any more alcohol. During the one hour defendant was in the bar, he drank four 12-ounce beers and four shots of whiskey, including one shot he spit out. Garrett believed defendant looked as though he had a mental impairment.

As defendant left the bar's parking lot in his black SUV, he cut off another man's car, drove onto the shoulder of the road, clipped a eucalyptus tree, and drove back onto Highway 67. The man who was observing defendant drive erratically saw defendant's car nearly hit a lamp pole. The man's wife called 911 as the man followed behind the SUV.

As the man followed the SUV, he saw the vehicle enter a parking lot. The SUV spun around and hit a jersey wall and some poles. The bumper of defendant's vehicle was torn away as it hit a telephone pole, and defendant

4

tore the passenger mirror off his vehicle when it became entangled in a wire connected to the telephone pole. The SUV then sped off and headed toward San Diego Country Estates in Ramona. The man followed the SUV until he was told to stop by the 911 dispatcher. Later, after the man had arrived home, he learned about a fatal collision.

At the preliminary hearing, the man was able to identify defendant as the driver of the black SUV. At trial, the man was unable to identify defendant as the SUV driver. Another witness observed a black SUV driving erratically at about the same time as the man. She later identified the SUV in a crashed state on the back of a tow truck.

Defendant made his way to a resort in Ramona, where he acted erratically. He had a cell phone but was unable to use it. He smelled strongly of alcohol and appeared drunk. The resort manager offered to call the local Lyft driver. When the Lyft driver arrived, he believed defendant looked "wasted." He drove defendant to a bar in Ramona. As they drove to town, the Lyft driver questioned defendant about the road being closed because of an accident and asked defendant what had happened to his car. Defendant refused to give him a straight answer, then started to cry. Defendant said he would never see his wife or children again.

Meanwhile, the resort manager called 911. A CHP officer secured the heavily damaged black SUV, which was still parked at the resort. The CHP officer found two 12 packs of beer on the floor in the back of the black SUV and determined the vehicle was registered to defendant. A sheriff's deputy entered the bar where the Lyft driver had taken defendant, who was then detained.

Defendant was arrested for driving under the influence. Because he refused to take a chemical test, the lead investigator obtained a warrant to

5

take a blood sample. A thorough investigation and reconstruction of the accident determined defendant's black SUV was the vehicle that crashed into Jessica's car, killing her and her unborn baby.

A criminalist estimated that based on the hypothetical facts of the case, defendant's blood alcohol level at the time of the crash was between 0.23 and 0.32 percent. That meant defendant was under the influence of alcohol and impaired for the purpose of driving.

On November 6, 2016, defendant in a separate incident was observed in his black SUV after his vehicle had struck a fence at a wildlife sanctuary in Ramona. When confronted, he looked "heavily intoxicated." Paramedics and the CHP responded. His blood sample showed a blood alcohol level of .28 percent. It was estimated his blood alcohol level at the time of the November 6 incident was between .27 and .35 percent.[3]

DISCUSSION

As noted, appellate counsel has filed a *Wende* brief, and defendant filed a supplemental brief. To assist the court in the review of the record and in compliance with *Anders v. California* (1967) 386 U.S. 738 (*Anders*), counsel has identified the following possible issues he considered in evaluating the potential merits of this appeal:

1. Whether sufficient evidence supported the court's finding defendant was competent to stand trial;

2. Whether the court erred by denying defendant's motion to suppress evidence of the November 6, 2016, driving under the influence incident;

---

[3] Defendant was charged with three counts for the November 6, 2016 incident. (Veh. Code §§ 23152, subds. (a) & (b) & 12500, subd. (a).)

3.  Whether the court erred by allowing the prosecutor to admit evidence of the computer "DVR" (i.e., dashcam) information from defendant's vehicle;

4.  Whether the court erred by denying defendant's motion to exclude evidence under *Trombetta v. California* (1984) 467 U.S. 479 regarding the tail light from the victim's car that was found in the grill of defendant's vehicle because law enforcement lost that piece of the tail light, and whether the court erred by refusing to instruct the jury about the police losing the piece of the tail light;

5.  Whether the court erred by allowing the prosecutor to introduce evidence of the November 6, 2016 incident to prove knowledge of the danger of drinking and driving for the murder counts in the May 14, 2017 incident;

6.  Whether the court erred by allowing the trial to go forward on July 10, 2019, in defendant's absence without first obtaining a formal presence waiver from defendant;

7.  Whether the court erred by refusing to instruct the jury on voluntary intoxication; and

8.  Whether the evidence was sufficient to support defendant's conviction for two counts of second degree murder.

We have reviewed the record as required by *Wende* and *Anders*. We have not discovered on appeal any arguable issues for modification or reversal.

Competent counsel has represented defendant on appeal.

7

## DISPOSITION

The judgment is affirmed.

BENKE, J.

WE CONCUR:

McCONNELL, P. J.

AARON, J.